[Civil No. 2571.   Filed April 25, 1927.]

[255 Pac. 494.]

C. RODNEY MacDONALD, Appellant, v. W. H. PERRY, E. P. PERRY, OTHELLO L. PERRY and CITY OF PHOENIX, a Municipal Corporation, Appellees.

Messrs. Kibbey, Bennett, Gust, Smith & Lyman, for Appellant.

Mr. L. C. McNabb, for Appellees.

LOCKWOOD, J.—W. H. Perry, E. P. Perry and Othello L. Perry, hereinafter called plaintiffs, brought suit against the city of Phoenix, a municipal corporation, hereinafter called the city. The complaint charged, in substance, that the septic tanks owned and operated by the city for the purification of its sewage were insufficient in number and capacity; that the waters discharged therefrom were impure and filthy, giving off an extremely offensive odor;

and that the city permitted such waters to run down open ditches and canals along the southern side of plaintiff's property, so that the odors emanating from the waters in such ditches and canals were a continuing nuisance, depreciating the value of plaintiffs' property and damaging them in the sum of $5,000. The city asked that C. Rodney MacDonald, hereinafter called defendant, be made an additional party defendant, and, plaintiffs consenting thereto, an order to that effect was made. An amended complaint was filed which repeated substantially the same allegations as to the city, but in respect to MacDonald contained the following two clauses:

"That defendant C. Rodney MacDonald, by means of ditches partly or entirely kept and maintained by him, carries or aids in carrying the waters close by and adjacent to the farm and uses said water for irrigation purposes and spreads same upon land adjacent to the home of plaintiff."

"That the defendant C. Rodney MacDonald in conjunction with the defendant city of Phoenix has aided in keeping the open ditches for the purpose of conveying said foul waters upon his farm west of the premises of plaintiffs and there cause said waters to spread out over his farm, increasing the nauseating effect of said impure waters coming from said sewers, so maintained by said defendant city of Phoenix. . . . "

A second amended complaint was later filed which did not differ materially from the first amended complaint, except by designating the nuisance complained of as a public rather than a private one. Defendant MacDonald demurred on the ground that two causes of action were improperly joined, to wit, one against the city for not maintaining its septic tanks in proper condition, and one against MacDonald for conducting alleged filthy and offensive waters to a point near the premises of plaintiffs. He also interposed a general demurrer and then answered, admitting the ownership and location of plaintiffs' premises, the

location of the tanks, and his use of the water therefrom, and maintenance of the ditch in question, but denying that such waters were impure or filthy, or that any offensive odors of consequence from them or the ditch arose, or that the same constituted a nuisance. He also set up that he had appropriated such waters from the Salt River in 1913, and had ever since lawfully used them to irrigate his own premises, and, as a special defense of estoppel, that W. H. Perry, then owner of the premises of plaintiffs, had sold him a right of way for the ditch in question, knowing that it was to be used to conduct those particular waters, and that he had expended much money in reliance on Perry's act.

The answer of the city denied that the septic tanks or the waters discharged therefrom in any way were offensive, and set up that the tanks had been maintained long prior to plaintiffs' purchase of the real estate in question; that it had discharged the sewage waters into the Salt River for years; and that MacDonald, against its will, was maintaining the ditch complained of by plaintiffs.

The matter was tried before a jury and the usual conflict in the testimony appeared, that offered by plaintiffs tending to show that the odors from the ditch in question made life on plaintiffs' property almost unendurable, while the evidence for defendant was to the effect that there was no noticeable odor whatever. The court allowed the case to go to the jury under instructions which permitted them to find either against defendant MacDonald alone, or against MacDonald and the city jointly, but required that, if they found in favor of MacDonald, they must find in favor of the city. A verdict was returned in favor of the city, but against MacDonald for the sum of $1,000. Immediately upon the verdict being returned, on motion of plaintiffs the court rendered judgment in accordance therewith, but no formal written judg-

ment was then signed or filed. Plaintiffs thereupon filed a motion asking for an order compelling the city to operate its septic tanks so that the waters flowing therefrom did not give off offensive odors, and to provide channels for the said waters to flow into the main bed of the river. This motion was held in abeyance until after a motion for a new trial was disposed of. On hearing the latter motion the court ordered that plaintiff remit $800 of the amount of the verdict, or a new trial would be granted, and, on such remission being made, the motion for new trial was denied. Argument was then had as to the form of written judgment to be filed, and the court finally signed one, finding that defendant MacDonald had been maintaining a public nuisance by taking the sewage waters from the main ditch of the sewer system of the city, below its septic tanks, and conducting said waters in a ditch maintained by him close to plaintiffs' premises, and it was ordered therein, among other things:

"That the defendant C. Rodney MacDonald, his agents, servants, employees, and all persons acting by, through, or under him, be and they are each and all of them hereby permanently restrained from any and all further use of and conduct of said sewer waters through, over, and into said ditch of defendant named, or through, over, or into any other ditch, canal, or other means of carriage of same, so long as such water is in condition to give off foul and offensive odors and to cause such odors to pervade the said property and the premises of the plaintiffs, and until it is shown to this court, after reasonable notice to plaintiffs, that said sewer water has been treated in such manner as will free it from offensive odors."

After this judgment was signed and filed, defendant refiled his motion for new trial, and it was again denied, whereupon he has appealed.

There are some seventeen assignments of errors, which we will discuss as seems advisable. On examination of the pleadings, it appears this is an action by private individuals for special damages caused them by the maintenance of a public nuisance, and for an abatement thereof. Under our statute (Penal Code 1913, § 383) a public nuisance is defined as:

"Anything which is injurious to health, . . . or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life, or property by an entire community or neighborhood, or by any considerable number of persons. . . . "

The particular act or thing which the complaint alleges constituted the nuisance in question was that there were certain filthy waters coming from the septic tanks operated by the city, and that—

"said impure, filthy, and sluggish waters filled with the filthy refuse of the city are emptied into the ditches or canals from said septic tanks, and that the said open ditches or canals along the southern side of the property of the plaintiffs where their home is located, and that said waters give off such offensive odors, sickening, nauseating, and unhealthful, so much so that the odors extend to and beyond their homes, rendering their homes almost uninhabitable at times, and uncomfortable; that they cannot enjoy the comfort and repose of their homes by reason of the stench and foul odors emanating from the open sewer ditch carrying said filthy waters alongside the farm of the plaintiffs; . . . that the defendant C. Rodney MacDonald in conjunction with the defendant city of Phoenix has aided in keeping the open ditches for the purpose of conveying said foul waters upon his farm west of the premises of plaintiffs. . . . "

It is apparent to us from the parts of the complaint just quoted, taken in conjunction with the remainder thereof, that the particular nuisance set

up was the alleged joint maintenance by defendant MacDonald and the city of a certain ditch carrying filthy waters, from which ditch and the waters therein foul and offensive odors emanated and passed over the premises of plaintiffs. Counsel for defendant claims that two separate nuisances are charged: First, the maintenance by the city of offensive septic tanks; and, second, the maintenance by MacDonald of an offensively smelling canal. We do not so construe the complaint. The allegations in regard to the septic tanks and the waters emerging therefrom are merely set up as an inducement to the real nuisance, to wit, odors emanating from such waters in the open ditch south of plaintiffs' premises, and it is alleged the city and MacDonald jointly maintained the ditch.

The general rule of law is that, when there is an allegation of a concerted action which is a tort, the joint tort-feasors are properly sued together and the jury may return a verdict against the defendants whom the evidence shows are guilty, and in favor of those who are innocent. 38 Cyc. 491. The court, therefore, correctly overruled the demurrer on the ground that two causes of action were improperly joined, and also rightly denied defendant's motion for an instructed verdict on the ground that the evidence showed two different acts.

Nor did the court err in authorizing the jury to bring in a verdict against the defendant MacDonald without returning one against the city. The city denied having anything to do with the offensive ditch; MacDonald insisted he, and he alone, maintained it. If the ditch was a nuisance as a matter of fact, MacDonald was unquestionably liable for damages caused thereby. If the city had nothing to do with its maintenance, even though it was a nuisance, it would not be responsible.

The fourth and fifth assignments of errors are governed by the same principles as the first and second. If defendant MacDonald's theory of the complaint was correct, they might have been good, but since, as we have held, the complaint sets up a single joint tort and the jury found on sufficient evidence that the city had nothing to do with it, the assignments must fail.

The sixth assignment of error is that the trial court erred in instructing the jury as to the measure of damages. The instructions given on this subject read as follows:

"If the plaintiffs have suffered some special damage, some damage which is different than that which is suffered by the general public, then they will be entitled to recover from MacDonald such damages as they have thus far sustained by reason of their being deprived of the comfortable use and enjoyment of their premises. The question of what that damage, if you find there is any such damage, is for the jury to determine from all the facts and circumstances in the case. There has been no evidence of any actual money damage; that is, no evidence has been introduced to show in dollars and cents . . . how much money damage has been sustained, if any has been sustained at all, from the evidence which has been introduced in the case. The burden, of course, is upon the plaintiffs here to prove all the material allegations of their complaint. . . . And they must show the amount of the damage; that is, they must show facts and circumstances from which the jury may estimate the damage which they have suffered, if any."

Defendant urges that, in an action like the present one, recovery is limited to the damages sustained by the real estate and that the measure of damages in such case is the rental value of the premises, or, if it be occupied by the plaintiff, the depreciation in the value of the use of the premises to the plaintiff. It is true that this is the general rule, but in an

action such as this, while a depreciation in rental values may properly be shown, it is not the true measure of damages, but rather the physical discomfort and privation of the comforts of the home. *Gempp* v. *Bassham*, 60 Ill. App. 84. We think the instructions on the measure of damages for this particular case, in view of the evidence and the pleadings, were entirely correct so far as they went. Had defendant wished further and more specific ones on this matter, he should have requested them. *Baker* v. *Maseeh*, 20 Ariz. 201, 179 Pac. 53.

What we have said in regard to the sixth assignment of error applies to the seventh and eighth also. We will consider the ninth and tenth assignments together. They refer to the giving by the court of two instructions, the first of which reads as follows:

" . . . Plaintiffs have a right to the full enjoyment of their home and farm without interference from anyone, and they are entitled to the unpolluted and uncontaminated air, and you are instructed that the defendants, or either of them, have no more right to cause the air which plaintiffs breathe in the living quarters to be contaminated with foul odors than they have to physically invade the premises of plaintiffs and cause injury."

The second was the following:

"The plaintiffs cannot complain of his conducting the water from the septic tanks of the city to his land for irrigation purposes or of any odors you may find emanated therefrom, unless you find that the effect of such odors is such as to materially impair the use or enjoyment of the plaintiffs' premises by people of ordinary sensibilities accustomed to residing in farming communities—I am going to change that by striking out the last part there—'accustomed to residing in farming communities.' I don't think that is the test. I think the test is whether they are people of ordinary sensibilities just like the ordinary run of people and not some person who has a hypersensitive sense of smell. It must be

the normal person, a person of normal sensibilities who would be offended by these odors.''

Defendant urges that from these two instructions the jury must have believed the right of plaintiffs to be protected against foul odors invading their premises was as absolute and unlimited as their protection against physical invasion and that the same was true regardless of the location of the premises, the source and the cause of the odors, and the business engaged in by plaintiffs and defendants.

In order that we may discuss this question intelligently we think it best first to lay down the general rule in regard to nuisances caused by odors and then apply that rule to the particular facts of the case. It has been rightly said that in the eye of the law no place can be convenient for the carrying on of a business which is a nuisance and which causes substantial injury to the property of another, nor can anyone's use of his own land be said to be reasonable which deprives an adjoining owner of the lawful use and enjoyment of his property. 20 R. C. L. 440. But it hardly admits a doubt that, in determining the question as to whether a lawful occupation is so conducted as to constitute a nuisance as a matter of fact, the locality and surroundings are of the first importance. *Baltimore etc. Ry. Co.* v. *Fifth Baptist Church,* 108 U. S. 317, 27 L. Ed. 739, 2 Sup. Ct. Rep. 719 (see, also, Rose's U. S. Notes); *St. Helens Smelting Co.* v. *Tipping,* 11 H. L. C. 642, 35 L. J. Q. B. 66, 25 Eng. Rul. Cas. 144. A business which is not *per se* a public nuisance may become such by being carried on at a place where the health, comfort or convenience of a populous neighborhood is affected. On the other hand, in certain places not everything that causes discomfort, inconvenience and annoyance, or even which may perhaps lessen the value of surrounding property, will be condemned or abated as a nuisance. *Mat-*

*thias* v. *Railway Co.*, 125 Minn. 224, 51 L. R. A. (N. S.) 1017, 146 N. W. 353; *St. Helens Smelting Co.* v. *Tipping, supra,* and cases cited. What might amount to a serious nuisance in one locality by reason of the density of the population, or character of the neighborhood affected, may in another place and under different surroundings be deemed proper and unobjectionable. What amount of annoyance or inconvenience caused by others in the lawful use of their property will constitute a nuisance depends upon varying circumstances and cannot be precisely defined. This question has come before the courts frequently and the rule is well established. In *Phillips* v. *Vitrified Brick Co.*, 72 Kan. 643, 2 L. R. A. (N. S.) 92, 82 Pac. 787, the court said:

"The making of brick is a useful and necessary business, and the fact that it may produce some annoyance or discomfort to those nearby does not necessarily justify interference or create civil liability. Ordinarily, an owner may make a lawful and reasonable use of his property although it may cause some annoyance and discomfort to those in the vicinity, if such inconvenience and discomfort are only slight, and are the natural and necessary consequences of the exercise of the owner's rights in developing the resources of his property."

So in *Wade* v. *Miller*, 188 Mass. 6, 69 L. R. A. 820, 73 N. E. 849, it was held:

"For what may amount to a serious injury to health or the enjoyment of property in one locality by reason of density of population, or the residential character of the neighborhood affected, or the nature of the specific act, may in another place, and under different surroundings, be deemed proper and unobjectionable."

The same rule was laid down in *Commonwealth* v. *Miller*, 139 Pa. 77, 23 Am. St. Rep. 170, 21 Atl. 138, in the following language:

"The right to pure air is, in one sense, an absolute one, for all persons have the right to life and health, and such a contamination of the air as is injurious to health cannot be justified; but, in another sense, it is relative and depends upon one's surroundings. . . . The defendants had a right to have the character of their business determined in the light of all the surrounding circumstances. . . . "

The general rule, and especially when part of the relief sought is an injunction which would in effect destroy defendant's property, is well laid down by Mr. Justice COOLEY in *Gilbert* v. *Showerman,* 23 Mich. 447, wherein he says:

"The question, therefore, in the case at bar, must be whether there is anything in the nature of the case which renders it unreasonable, in view of the relative rights, interests, and wishes of both parties and the general welfare of the public, that defendants should continue upon their premises the business they are now engaged in or whether, on the other hand, the resulting annoyance to the complainant must be regarded as one which is incident to the lawful enjoyment of property by another, and which consequently, can form no basis for legal redress.

"And in considering this question the fact is to be kept in view that the business of the defendants is one which is lawful in itself and necessary to the community, and which the public good requires shall be carried on by some persons in some locality. The question is whether it be proper and right that it be carried on in the particular locality where it is now established. Even the most offensive trade, as we have seen, is allowed to be carried on in a remote place, and this means, not a place remote from all other occupations and trades, but remote from such other occupation or trade as would be specially injured or incommoded by its proximity; in other words, in a place which, in view of its offensive nature, is a proper and suitable one for its establishment. The most offensive trades are lawful, as well as the most wholesome and agreeable; and all that can be required of the men who shall engage

in them is that due regard shall be had to fitness of locality. They shall not carry them on in a part of the town occupied mainly for dwellings, nor, on the other hand, shall the occupant of a dwelling in a part of the town already appropriated to such trades have a right to enjoin another coming in because of its offensive nature. Reason, and a just regard to the rights and interests of the public, require that in such case the enjoyments of pure air and agreeable surroundings for a home shall be sought in some other quarter; and a party cannot justly call upon the law to make that place suitable for his residence which was not so when he selected it. . . .

"We cannot shut our eyes to the obvious truth that, if the running of this mill can be enjoined, almost any manufactory in any of our cities can be enjoined upon similar reasons. Some resident must be incommoded or annoyed by almost any of them. In the heaviest business quarters and among the most offensive trades of every city will be found persons who, from motives of convenience, economy, or necessity, have taken up there their abode; but in the administration of equitable police, the greater and more general interests must be regarded rather than the inferior and special. The welfare of the community cannot be otherwise subserved and its necessities provided for. *Minor inconveniences must be remedied by actions for the recovery of damages rather than by the severe process of injunction.*" (Italics ours.)

With this statement of the general principle governing cases of this kind we are in hearty accord. While on the one hand a man has the right to be protected against unreasonably unpleasant odors emanating from his neighbor's property, or caused by his neighbor's acts, yet in determining whether such odors constitute a nuisance it is not only proper, but necessary to take into consideration all the surrounding circumstances of the case. A pigpen maintained in an apartment house, although in the most sanitary and cleanly manner possible, would rightly

be held a private, if not a public, nuisance. On the other hand, a similar pen situated on a farm several miles from town, although of itself not nearly so free from odors or so carefully kept as the first one, would be a perfectly lawful enterprise, and a neighboring farmer might not be entitled to abate the same as a nuisance. We think the instructions complained of, when taken together, were calculated to mislead the jury and to cause them to believe that plaintiffs' right to be free from noxious odors was under any and all circumstances as absolute as their right to be free from a physical trespass, and that the fact that both plaintiffs and defendants were residing in a farming district could not be taken into consideration by them in determining whether or not the odors complained of constituted either a public or a private nuisance.

Since in our opinion the judgment must be reversed on account of these erroneous instructions, it will not be necessary for us to consider most of the remaining assignments, as they are of such a nature that the matters complained of will probably not occur on another trial of the case. We would suggest, however, that where, as appears in this case, the actual damage to plaintiffs did not exceed $200, a judgment granting an injunction, which in effect would injure defendant MacDonald's premises to an infinitely greater degree, if not destroy their value entirely, is extremely drastic.

The usual rule, when the particular manner in which some legitimate business is conducted is held to be a nuisance and the injury caused thereby is small in comparison with the value of the business, is that any injunction issued should first grant the parties enjoined a reasonable opportunity whereby to change their method of carrying on the business, or to render that method innocuous, before it will be forbidden. If, as a matter of fact, defendant

MacDonald is maintaining an open ditch carrying offensive waters of such a nature that, in view of all the circumstances surrounding the case, the locality, and any other matters which may appear in the evidence, it comes within the definition of a public nuisance, and he cannot or will not remedy the situation, such nuisance must of course eventually be abated, even though it may result in a complete destruction of his property, regardless of its value. But such drastic action should not be taken until it is first established in a manner provided by law that he is maintaining such a nuisance, and, second, that there is no reasonable way of destroying the nuisance without also destroying his property.

The judgment of the superior court of Maricopa county is reversed and the cause remanded for new trial in accordance with the views expressed herein.

ROSS, C. J., and McALISTER, J., concur.