[Civil No. 3885. Filed December 27, 1937.]

[74 Pac. (2d) 582.]

SALT RIVER VALLEY WATER USERS' ASSO-CIATION, a Corporation, Appellant, v. LELAND O. ARTHUR and AGNES S. ARTHUR, His Wife, Appellees.

Messrs. Sloan, Scott & Green, for Appellant.

Mr. L. J. Cox, for Appellees.

LOCKWOOD, J.—This is an appeal by Salt River Valley Water Users' Association, a corporation, hereinafter called defendant, from a judgment in favor of

Leland O. Arthur and Agnes S. Arthur, his wife, here-inafter called plaintiffs. The record shows the following situation:

Plaintiffs filed a complaint setting up two causes of action against defendant. As the first cause, the complaint alleges, in substance, that defendant was a public service corporation engaged in the business of operating a canal system in Maricopa county, included in which was a waste ditch running along the side of certain lands owned by plaintiffs. The complaint then continued:

"That on or about the 1st day of January, 1936, defendant stopped, or permitted to be stopped or obstructed the flow of water in said ditch so as to cause the water to back up at various times upon the lands of plaintiffs and to remain thereon and to become stagnant in said ditch and to allow mosquitos and other various noxious insects to breed therein and to cause vegetation and animal matters to become decayed therein and to create an offensive odor and stench around said ditch and around the premises of plaintiffs as adjoining thereto, all to plaintiffs' damage in the sum of Five Hundred ($500.00) Dollars."

The second cause of action set up the same general facts in regard to the property and the operation of the waste ditch by defendant, and then alleged:

"That on or about the 9th day of September, 1936, and continuously to the date of filing this cause, on account of said obstruction in the flow of said water in said waste ditch, defendant caused large quantities of water to enter said ditch above plaintiffs' premises and above said obstruction and on account thereof, and on account of the large quantities of waste water in defendant's said ditch, defendant caused large quantities of water to gather on said premises and to overflow the banks and to stand and become stagnant on plaintiffs' yard and lawn, and under the dwelling and outbuildings thereto, and over a large part of the Southern portion of plaintiffs' premises, that as a proximate consequence thereof filth, trash, polluted

water and dirt were caused to stand and become stagnant on plaintiffs' lots and premises and caused same to be covered with filth, and various decayed vegetable and animal matters and has prevented plaintiffs from using said premises and has destroyed the vegetation thereon and has caused mosquitos and other noxious insects to breed therein, and caused part of plaintiffs' house to settle and on account of said water standing for a long length of time over and around plaintiffs' house will cause same in the future to crack, deteriorate and settle, all to plaintiffs' damage in the sum of Fifteen Hundred ($1,500.00) Dollars.''

The case was tried to a jury which returned a verdict in favor of plaintiffs, on the first cause of action in the sum of $240, and on the second cause of action, $165, whereupon this appeal was taken.

There are thirteen assignments of error which raise four questions for our consideration. The first question is the sufficiency of the pleading in the first cause of action. It is contended by defendant (a) that the allegations of the first cause of action limit the injury complained of to conditions obtaining only on or about January 1, 1936, and that, therefore, the court should have limited the proof on that cause of action to approximately that period; and (b) that there is no allegation in the complaint that any special damages were occasioned to plaintiffs, and that the facts set forth therein do not justify a verdict for general damages.

As far as (a) is concerned, we think the position of defendant is not sound. The allegation of the complaint in regard to the first day of January is that ''on or about'' that time the defendant ''permitted to be stopped or obstructed the flow of water in said ditch,'' and the result of such obstruction was alleged to be ''to cause the water to back up at various times upon the lands of plaintiffs.'' In other words, the obstruction which caused the water to back up was

placed in the ditch about the first of January, but the backing up caused by that obstruction occurred at many times thereafter. We think this was sufficient to permit plaintiffs to offer evidence of the alleged stagnant and offensive condition of the water at any time after the first of January. Had defendant desired more detailed information as to when it was claimed the water backed up, in order to make its defense, it should have made a motion to make the complaint more definite and certain in that particular.

Proposition (b) presents a more serious question. We have set forth the law in regard to general and special damages in the case of *White River Sheep Co.* v. *Barkley,* 37 Ariz. 49, 288 Pac. 1029, 1031, in the following language:

" 'General damages are such as the law implies and presumes to have occurred from the wrong complained of.' 17 C. J. 712, § 20.

" 'Special, as contradistinguished from general, damages are those which are the natural but not the necessary consequence of the act complained of. They are such as actually result from the commission of the wrong, but are not such a necessary result that they will be implied by law.' 17 C. J. 715, § 42.

"If a party would claim special damages or damages not implied or presumed from the injury, the rule is he must in his pleading inform his adversary of such claim of special damages and of what they consist."

■■ We think that, if it be true that anything caused vegetation and animal matters to become decayed and create an offensive odor and stench around the premises of plaintiffs, the law would imply such condition interfered with their proper enjoyment of such premises. We hold, therefore, that the allegations in the first cause of action were sufficient to permit proof that, by reason of the conditions alleged to have existed, plaintiffs' enjoyment of their premises was seriously interfered with.

The next question is based upon the following instruction which was given to the jury:

"You are instructed, Gentlemen, that the defendant in the construction, operation and maintenance of its waste ditches is required to use reasonable care to see that the same are constructed, maintained and operated as to prevent the water from becoming stagnant, filthy and obnoxious adjacent to or upon other premises."

Defendant urges, with much earnestness, that this instruction makes it an insurer that under no circumstances shall its ditches become stagnant or obnoxious to adjacent premises. Because of the importance of the issue involved, we quote from defendant's brief:

"By the foregoing instruction the jury was told that it was the duty of the defendant, Salt River Valley Water Users' Association, in the operation of the Salt River Project, to so construct and operate its waste ditch in front of plaintiffs' premises 'as to prevent the water from becoming stagnant, filthy and obnoxious adjacent to or upon other premises.'

"In a naturally desert country, such as the Salt River Valley of Arizona, dependent for its very existence upon irrigation projects, a necessary and unescapeable evil is the maintenance and operation of ditches for carrying off waste water. By reason of the natural contour of the country and other causes it is often impossible to drain all the water out of such ditches, and under even the best of operating conditions, a certain amount necessarily remains in the ditch, however unpleasant and offensive such condition may be to the aesthetic and olfactory senses of those residing near by. It is the public policy of this State that the maximum use of water be had and the maximum amount of land irrigated from available sources. Irrigation and reclamation projects are a lawful enterprise, without which the state of Arizona for the most part, would be desert. In their operation, like that of almost every other lawful enterprise, there are bound to be certain annoyances and inconveniences, particularly to those whose sensibilities are unduly acute. However, the operation thereof within

reasonable bounds gives rise to no cause of action for abatement or the recovery of damages for conditions necessarily incident thereto, and without which they cannot exist.''

With the general statement set forth in the quotation as to the importance of irrigation to the Salt River Valley, and the fact that it is not always possible that great irrigation systems can be conducted with theoretically perfect efficiency and that it would be unreasonable to require that degree of care in their operation, we most heartily agree. We think, however, that defendant has greatly misunderstood the effect of the instruction complained of. It does not place upon defendant the duty of maintaining its system in perfect condition so that, under no circumstances, may it become offensive. It simply requires that it shall use reasonable care to see that its waste ditches are properly constructed, maintained, and operated, and this duty we think is unquestionably imposed upon it by the law. What that duty may require depends entirely upon the circumstances of each particular case, as what would be reasonable care under one set of circumstances might be actionable negligence under another. If it were the contention of defendant that it had used every reasonable care in the maintenance and operation of its waste ditch, and it desired further instructions upon that point, it was its duty to ask for them. *City of Phoenix* v. *Mayfield,* 41 Ariz. 537, 20 Pac. (2d) 296. We see no error in the instruction complained of.

The next question is whether it was error for the court to refuse to give the following instruction:

''I further charge you, Gentlemen of the Jury, that if you shall find from a preponderance of the evidence in this case that the plaintiffs, or either of them, requested the agents and employees of the defendant, Salt River Valley Water Users' Association, not to place any dirt on the north bank of the waste ditch

in front of plaintiffs' premises prior to the time of the alleged flooding of September, 1936, and at the time of such request said plaintiffs were informed by defendant's employees that if they did not place dirt upon said north ditch bank water was likely to run over said bank and flood said premises, and that the plaintiffs, or either of them, thereupon informed said employees of defendant that they would take care of any water coming into their premises over said bank, and if you shall further find that the water entering said premises at the time mentioned in Plaintiffs' Second Cause of Action entered the same from over said ditch bank in front of their premises, and that said water would not have entered plaintiffs' premises except for the aforesaid acts of the plaintiffs in refusing to permit the employees of defendant Association to place dirt upon that north bank, then I charge you that the plaintiffs cannot recover on their Second Cause of Action.''

This, in substance, was an instruction that, if plaintiffs' premises were damaged by an overflow which was caused by the action of plaintiffs in refusing to permit defendant's servants to build up the north bank of the waste ditch, plaintiffs could not recover for any damages caused thereby. It appears from the undisputed evidence that plaintiffs, in an effort to beautify their premises, did lower the bank of the waste ditch adjoining their premises and refused to permit defendant's employees to restore the bank to its original condition. The court instructed the jury as follows:

''On the other hand, gentlemen, you are instructed that the evidence in this case is undisputed that the plaintiffs, prior to any of the alleged floodings, cut and lowered the north bank of the waste ditch in front of their premises. Therefore, if you find from a preponderance of the evidence in this case that such act of the plaintiffs in cutting and lowering said north ditch bank was the sole and proximate cause of the flooding of their premises at the time or times alleged in their complaint herein, and not any act or omission

on the part of the defendant, the Salt River Valley Water Users' Association, in the construction or maintenance of said ditch, then I charge you that the plaintiffs cannot recover herein and your verdict in that event would be for the defendant.

"  . . . ; or if you believe from the greater weight of the evidence that any injury or damage which occurred, if you believe there was any injury or damage, resulted as the sole and proximate cause of the plaintiffs' own act in lowering the bank upon the ditch, then and in that event your verdict would be for the defendant."

It is true that the instruction given referred to the lowering of the bank of the ditch, while the one asked by defendant was based upon the refusal of plaintiffs to permit defendant's agents to raise it after plaintiffs had lowered it, but the ultimate effect was the same, to wit, that if the condition of the bank, whether on account of its being lowered by plaintiffs or because they refused to permit defendant to raise it, was responsible for the flooding, defendant was not liable. The test in this jurisdiction of whether the giving or refusing of an instruction is reversible error is whether or not the action taken by the court may reasonably be presumed to have misled the jury as to the correct rule of law to be applied to the facts. While it could have done no harm to give the requested instruction, we cannot say that the jury was misled as to the law of the case by the refusal to give it, and it is not, therefore, reversible error.

The last question is as to the sufficiency of the evidence as to the amount of damages. So far as the first cause of action is concerned, no precise measure of damages can be given for discomfort suffered by reason of a private nuisance of the kind complained of. It is urged that a contractor who testified on behalf of plaintiffs said that the building, which it was alleged was injured by the flooding of the prem-

ises, could be restored to its original condition for $150, while the verdict on that cause of action was for $165. This estimate covered merely the actual cost of repairs of damages to the house, and did not include any loss of use of the house to plaintiffs while the same was being repaired, or the cost of cleaning the premises from the trash and filth that had been deposited thereon. We cannot say the damages allowed by the jury were not reasonably sustained by the evidence in the case.

The judgment is affirmed.

McALISTER, C. J., and ROSS, J., concur.