309 P.2d 773

**Buck RODGERS and Betty Zane Rodgers, his wife, Appellants,**

**v.**

**Clair BRYAN, Appellee.**

**No. 6167.**

Supreme Court of Arizona.

April 8, 1957.

Byrne & Byrne, Prescott, Jerry Geisler, Beverly Hills, Cal., W. Francis Wilson, Phoenix, for appellants.

Christensen & Anderson, Flagstaff, for appellee.

LA PRADE, Justice.

Appeal from a judgment awarding compensatory and punitive damages in favor of plaintiff-appellee against defendants-appellants, for assault and battery.

### The Pleadings.

Plaintiff's complaint charged *both* defendants, husband and wife, with a malicious assault and battery upon him at a time when he was a business visitor and invitee upon the premises of defendants. The effect of the allegation was that defendants were joint tort feasors. Defendants denied that they or either of them were guilty of the claimed assault; denied the invitee allegation and alleged that plaintiff was a trespasser. Defendants further alleged that plaintiff was the aggressor in the altercation that ensued, and admitted that Buck Rodgers struck plaintiff in claimed self-defense—"and in so doing did not use more force than was reasonably necessary under the circumstances to protect himself from injury * * *."

### Plaintiff's case.

Plaintiff's evidence was to the effect that about 9:30 p. m. on the date in question he, together with his brother and sister and her husband, stopped at defendants' combination trading post, store, restaurant and gas station, located on U. S. Highway 89, approximately fifty miles north of Flagstaff, Arizona, on the Navajo Indian Reservation. This establishment was admittedly owned by defendants, and operated by them and their children as a community property enterprise. The purpose of the stop was to take on gasoline, eat lunch and use the rest rooms. They parked their car adjacent to the gas pumps and were met by defendants' sons. A member of plaintiff's party inquired as to the whereabouts of the rest room and was informed that the rest rooms were locked up for the asserted reason that water had to be hauled thirty miles. Upon further inquiry as to what should be done in a case like that, defendants' son told them to "go out there anywhere or around the building". Plaintiff testified that he went around the building to a darkened area some thirty feet therefrom, and proceeded to urinate, at which

time Buck Rodgers opened the back door, turned a flashlight on the plaintiff, and told him to "get going out of there." Rodgers then walked toward the plaintiff, keeping the flashlight on him, and again demanded that he "get going". Plaintiff insisted that he was going to finish what he was doing, at which time Rodgers hit him in the mouth with the flashlight, and followed up by hitting him on the head with a rock. During these assaults plaintiff attempted to shield his head with his arms to protect his skull, soft from a prior brain tumor operation. Buck Rodgers' wife, codefendant, then appeared on the scene with a board with which she bludgeoned the plaintiff. As the struggle continued Rodgers' son handed him a sharp rock with which Rodgers struck plaintiff on the arm, tearing his flesh to so great an extent that the bone was exposed. When the beating ended plaintiff had sustained severe bodily injuries and was staggering, badly battered and bleeding profusely. In addition to the torn arm plaintiff's injuries included a crush wound over his left temple, a four-inch vertical laceration on his head, and a brain concussion. At the trial one year after the assault a medical expert expressed the opinion that permanent brain damage had resulted. Notwithstanding the gravity of plaintiff's injuries and the fact that medical facilities were some fifty miles distant, the defendants refused, even when begged, to lend first aid assistance. Instead, appellants insisted that the trading post was not a first aid station, and ultimately directed plaintiff's party to leave at gun point.

## Defendants' Case.

Buck Rodgers testified that his attention was called to the presence and conduct of plaintiff by his daughter who had observed the plaintiff relieving himself behind the building, in a well-lighted area visible to his cabin guests and his family; that he requested plaintiff to cease his offensive conduct and leave the premises; that plaintiff initiated the altercation by striking and kicking him, and that he acted solely in self-defense. Mrs. Rodgers denied that she struck plaintiff with a board or in any manner participated in the episode, and explained her presence as that of an innocent bystander. The testimony of the defendants was corroborated by their grown children, a daughter and two sons.

The cause was tried to a jury which returned a verdict in favor of the plaintiff. Judgment was entered against the defendants, Buck Rodgers and Betty Zane Rodgers, fixing compensatory damages at $15,000 and a like amount for punitive damages. From the judgment entered on the verdict and denial of a motion for new trial, this appeal was taken.

Appellants have presented eight assignments of error in their endeavor to secure a reversal of the judgment. Appropriate consideration will be given to each.

148

■ Under assignment of error No. 1 appellants assert that the trial court erred by refusing to submit separate forms of verdict to the jury, contending that this deprived the jury of its prerogative of finding in favor of one joint tort feasor and against the other. We believe that this assignment is well taken in view of the issues presented by the pleadings and evidence. Plaintiff charged the defendants as joint tort feasors, which allegations were denied by each of the defendants. In addition to this pleaded defense, defendants injected into the trial, as a defense, the right of Buck Rodgers to use such force as was reasonably necessary to eject the plaintiff from the premises to prevent him from indecently exposing himself, if the jury so found. At the instance of defendants' counsel the court instructed the jury on this defense, its applications and limitations. Defendant Betty Rodgers, in addition to her written denial, substantiated this denial by her oral testimony. On this issue made by her she was entitled to have submitted to the jury a form of verdict finding in her favor if the jury concluded that she did not personally assault plaintiff, as alleged, or aid or abet her husband if they concluded that her husband assaulted plaintiff. MacDonald v. Perry, 32 Ariz. 39, 46, 255 P. 494; Ramirez v. Chavez, 71 Ariz. 239, 226 P.2d 143. The joint and several judgment entered against her has the effect of binding her separate estate while denying to her the right to which she was entitled. This fundamental error is so prejudicial as to require that the judgment as to her, based on a finding that she was a joint tort feasor, be set aside. The error is more patent in view of the fact that she requested the court to submit separate forms of verdicts.

■ In discussing this assignment of failure to give separate verdicts, counsel have also argued the effect of the judgment against defendant Buck Rodgers, in the event we reverse the judgment as to defendant Betty Rodgers. Appellants assert that if the judgment is reversed as to Betty Rodgers then the community estate of the parties will not be available by way of execution to satisfy the judgment against Buck Rodgers. This contention is made on the theory that the tort, if any, of Buck Rodgers, was not in furtherance of any community interest but rather outside it. We do not agree, and point out that Buck Rodgers' intentions, by his own admissions, were to protect the morals of his family, hotel guests, and his property against trespass. These were obviously community interests. His conduct and actions were intended to be performed in behalf of the community, and his separate property and that of the community are liable for the unfortunate results of his violent conduct. McFadden v. Watson, 51 Ariz. 110, 74 P. 2d 1181; Ruth v. Rhodes, 66 Ariz. 129, 185 P.2d 304.

■ . By assignment No. 2 appellants contend that reversible error was committed by the trial court in refusing to admit in evidence a document assertedly impeaching plaintiff's testimony as to the manner in which the assault was committed. The document referred to was a criminal complaint purportedly signed by the plaintiff, charging that the assault here under consideration was committed by defendant Buck Rodgers striking plaintiff with his fists. Plaintiff testified that he signed this complaint in blank, and that it was presumably filled in by another person. The court on this showing denied its admission in evidence. Appellants contend that this court record speaks verity and presented a jury question as to its authenticity and weight on the question of plaintiff's veracity. Buck Rodgers, at the trial of the instant case, admitted striking plaintiff with a board described as a 1 x 4, four feet in length, corroborating the testimony of plaintiff. This admission, together with all the circumstances, indicates that the impeaching statement was of no consequence. The refusal to permit the impeachment of plaintiff was harmless when the truth of the testimony given by plaintiff, that he was hit with a board, was voluntarily admitted by defendant. People v. Franco, 79 Cal.App. 682, 250 P. 698, 699. Assuming, without deciding, that the ruling or the trial court was erroneous, it constitutes no basis for error in the absence of a showing of prejudice of defendants' rights, which is totally absent. 24 C.J.S., Criminal Law, § 1908, citing cases.

■ Assignments Nos. 3 and 4 assign as error the admission of evidence of the financial worth of the defendants and instructing that such evidence might be considered in assessing punitive damages. It is asserted this procedure was in violation of the claimed rule that such evidence may not be received in tort cases against two or more tort feasors. No determination of what the rule is or should be is necessary in this case in view of our disposition of our assignment of error No. 1, relieving Betty Rodgers of the judgment as to her separate property. This testimony was admissible against the defendant Buck Rodgers, where the evidence as here was such as to justify an award for exemplary damages. 25 C.J.S., Damages, § 126 b (2).

■ Under assignment of error No. 5 appellants contend that the trial court should have instructed the jury to limit the amount of recovery for loss of future earnings, upon which there was evidence, to the present cash value, and that failure to include such provision in the plaintiff's instruction No. 4, which called the attention of the jury to plaintiff's life expectancy as reflected by mortality tables, constitutes reversible error.

The use of mortality tables is generally recognized as relevant proof, among other

facts and circumstances surrounding an injury, in determining the amount as would fairly and reasonably compensaate for bodily injuries sustained, for the physical and mental suffering endured and to be endured by reason of the injuries, for loss of his time, and for the pecuniary loss of the diminished capacity for earning money in the future. Coppinger v. Broderick, 37 Ariz. 473, 295 P. 780, 81 A.L.R. 419. The injured person's life expectancy is just one of the elements to be considered by the jury in fixing reasonable compensatory damages. Appellant recognizes and admits their competency and relevancy but contends that his objections were broad enough to include his contention that the instruction was faulty in that it did not limit recovery to the present value of any amount that might be awarded for loss of future earnings. We recognize that many jurisdictions hold that the true measure of damages is limited to the amount of recovery in respect to loss of future benefits to present cash value, and that the court is compelled to so instruct when defining the measure of damages. A goodly number of courts hold that an instruction which fails to limit the right of recovery for loss of future benefits to present worth is not erroneous where the trial court gave a good general instruction authorizing the recovery of fair, reasonable and just compensation for pain suffered and to be suffered, and loss of future earnings. For compilation of cases see Annotation, Present Worth, III. c., 77 A.L.R., p. 1459. We recognize that the defendant had the right to require that the general instruction on the measure of damages that was given be supplemented by another, calling attention to the fact that, in estimating what amount would compensate plaintiff, future benefits should be considered at their present value. In the instant case defendants did not ask for any such supplemental or refined instruction. Our Rule 51, Rules of Civil Procedure, 16 A.R.S., provides that:

"51(a) * * * No party may assign as error the giving or the *failure to give* an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. * * *" (Emphasis supplied.)

The defendant objected to the instruction he now complains of on the ground it was incompetent, immaterial and irrelevant. We have pointed out that the evidence was admissible, and hold that the objections to the instruction thereon were not specific enough upon which to predicate an assignment of the failure of the court, on its own motion, to give an instruction limiting the amount of recovery in respect of the loss of future benefits to present worth. We have repeatedly held that where instruction is deemed incomplete a request should be made for an instruction *fully*

covering the situation to save error, Tenney v. Enkeball, 62 Ariz. 416, 158 P.2d 519, and in Salt River Valley Water Users' Ass'n v. Arthur, 51 Ariz. 101, 74 P.2d 582, it was determined that if the defendant desired further instructions upon a point it was his duty to ask for them; and that a failure to request a more specific instruction on the measure of damages precludes a complaint on the one given. MacDonald v. Perry, supra. In view of our rule 51 and the previous holdings of this court, we do not believe it was incumbent upon the trial court, on its own motion, to include in its instructions on the measure of damages, the refinement of the "present value rule". No error.

■■■■ Assignment of error No. 6 asserts as error the refusal of the trial court to give defendants' instruction No. 1, which in effect required the jury to find that before a verdict could be rendered against Betty Rodgers that they would have to find that she personally assaulted plaintiff and that punitive damages could *only* be assessed against her provided they found that "her participation in the assault was aggravated, wanton, or maliciously intentioned". This is an erroneous concept of the law—Betty Rodgers could have been found equally liable if it was found that she acted in concert with, or aided and abetted, her husband in his assault on plaintiff. Ramirez v. Chavez, 71 Ariz. 239, 226 P.2d 143; Miller v. Singer, 131 Colo. 112, 279 P.2d 846. To make her individually liable for punitive damages it was necessary only to show that she was a joint tort feasor—acting in concert with, or aiding and abetting, her husband, provided his conduct was wanton, malicious or under circumstances of aggravation. The conduct and animus of the principal assailant is attributable to all participants. Keane v. Main, 83 Conn. 200, 76 A. 269.

■■■■ Assignment No. 7 challenges the sufficiency of the evidence to warrant punitive damages, asserting that there was no evidence to show that defendant Buck Rodgers acted in a reckless or wanton disregard of plaintiff's rights. Reference to the evidence completely refutes this assignment, and makes it unworthy of treatment.

■■■■ Assignment No. 8 asserts that the verdict and judgment thereon, awarding compensatory damages in the sum of $15,000 and a like sum for punitive damages, did not result from a fair consideration of the evidence, and was the result of passion and prejudice on the part of the jurors. The statement of this court in Ross v. Clark, 35 Ariz. 60, 274 P. 639, 641, we find to be exceptionally appropriate here:

"We realize that a jury's verdict ought not to be vacated or the amount thereof reduced except for the most cogent reasons. The rule here and elsewhere is that the verdict will be

left undisturbed if reasonably supported by the evidence, when the trial is free from error. There is no absolute fixed legal rule of compensation in actions of this kind, and as a reviewing court we feel we ought not to interfere with the verdict unless it clearly appears that the jury has mistakenly applied the wrong principles in estimating the damages, or was actuated by improper motives or bias indicating passion or prejudice. This is because in actions for personal injuries the law does not attempt to fix precise rules for the measure of the damages, but leaves their assessment to the good sense and unbiased judgment of the jury. * * *"

█ We see no need to restate the summary of the evidence set forth previously, nor to analyze it to show that it amply warranted the jury in returning the verdict it did. Plaintiff's actual and special damages were great. The jury was reasonably warranted in assessing punitive damages for what it branded as an unprovoked, unfeeling, violent and cruel assault upon plaintiff, resulting in permanent injury. The action of the jury does not suggest to our minds that it was activated by improper motives or bias indicating passion or prejudice.

The judgment as to the defendant Buck Rodgers is affirmed; and as to defendant Betty Rodgers is reversed for a new trial. Appellee's costs on appeal are to be assessed against defendant Buck Rodgers.

UDALL, C. J., and WINDES, PHELPS and STRUCKMEYER, JJ., concur.