616 P.2d 920

**Charles CADWELL, Petitioner–Appellant,**

v.

**Gail CADWELL, Respondent–Appellee.**

**No. 1 CA–CIV 4689.**

Court of Appeals of Arizona,
Division 1,
Department B.

June 24, 1980.

Rehearing Denied July 25, 1980.

Review Denied Sept. 11, 1980.

Law Offices of Merwin D. Grant by Merwin D. Grant and Finn, Finn & Finn by Ruth G. Finn, Phoenix, for petitioner–appellant.

Machmer, Schlosser & Meitz, Ltd. by Robert H. Schlosser, Phoenix, for respondent–appellee.

## OPINION

HAIRE, Judge.

This is an appeal from a decree dissolving the marriage of the parties. The questions raised on appeal involve the allocation of their debts.

The parties were married in June 1973. The appellant, Charles Cadwell, petitioned for dissolution of the marriage in November 1977. The unusual feature of the case revolves around the fact that the appellee Gail Cadwell and her mother entered pleas of guilty to the crime of embezzlement in October 1977, and as a part of those proceedings appellee agreed to make restitution to the corporate victim in the amount of $80,000. Appellant asked the trial court to allocate that and certain other related debts, including attorney's fees and potential income tax liability, to appellee. He also asked that he be given credit for the loss of his share of equity in the family residence, which came about when he agreed to assign it to the victim as part of the restitution program for the stated purpose of keeping his former spouse "out of jail". Appellant further requested that each party be assigned the secured indebtedness upon the respective vehicle assigned to each party by the decree and that each party pay for any indebtedness incurred by such party after separation in accordance with the terms of a pre–trial stipulation entered into by the parties. The trial court held that it was without jurisdiction to make an allocation of indebtedness, and its

ruling in that regard is the threshold issue on appeal.

The precise ruling of the trial court on the principal matter at issue is as follows:

"6. That the Court has no jurisdiction to assign the payments of indebtedness or taxes herein, there being no statutory provision granting said jurisdiction to the Court. *Hunt v. Hunt*, [22 Ariz.App. 554] 529 P.2d [508] 709, and *Jankowski v. Jankowski*, [114 Ariz. 406] 561 P.2d 327."

■ It is true that our statutes in regard to dissolution do not contain any explicit grant of authority to allocate the duty to pay debts as between the parties. The trial court is, however, required to provide in the decree for disposition of the property of the parties. A.R.S. §§ 25–312 and 25–318. Other statutes require the court to consider and, if appropriate, make provision for the payment of maintenance and support for the benefit of a former spouse and children. A.R.S. §§ 25–312, 25–315, 25–319 and 25–320.

In *Srock v. Srock*, 11 Ariz.App. 483, 484–85, 466 P.2d 34, 35–36 (1970), decided under the former divorce statutes, Division 2 of this Court, responding to an argument by the appellant that the trial court was without jurisdiction to allocate debts, stated:

"We particularly are compelled to affirm the trial court's discretion to allocate community liabilities because to do otherwise would nullify divorce effectiveness. If the debts already owed by the community, as distinct from the wife's attorneys' fees, cannot be allocated between the parties then an essential item of divorce dispute remains unresolved. We do not mean to say that allocating community liabilities to one party can bind that party to a creditor for a certain amount, or that the creditor, not being a party to the action, is bound to a certain amount. All the decree does effectively is put the responsibility for community debts on one party, whatever that liability might be. Ultimately, the responsibility to so pay cannot be enforced by contempt, as is alimony, but can only be enforced as any

other action in debt, or as done in the instant case."

In *Spector v. Spector*, 17 Ariz.App. 221, 496 P.2d 864 (1972), the same court reaffirmed its conclusion in *Srock*. In *Neely v. Neely*, 115 Ariz. 47, 563 P.2d 302 (App.1977), decided under the present statutory framework for dissolution enacted in 1973, the court cited *Spector* for the proposition that "it is within the power of a court to allocate payment of debts to one or both parties." 115 Ariz. at 49, n.1, 563 P.2d at 304.

Our Supreme Court, in *Neal v. Neal*, 116 Ariz. 590, 594, 570 P.2d 758, 762 (1977), stated:

> "So long as the trial court acts equitably, it is allowed great discretion in the apportionment of the community assets and obligations. *Spector v. Spector*, 17 Ariz.App. 221, 496 P.2d 864 (1972). Considering appellant's future earning ability, we do not find an abuse of discretion in assigning the medical, legal, and child support obligations to appellant."

■ Assets and obligations are reciprocally related and there can be no complete and equitable disposition of property without a corresponding consideration and disposition of obligations. The above decisions accordingly recognize that jurisdiction to allocate indebtedness inheres in and is implicit in the power to make disposition of property. *Hunt v. Hunt*, 22 Ariz.App. 554, 529 P.2d 708 (1974), cannot be read to the contrary. It was concerned with custody matters. *Jankowski v. Jankowski*, 114 Ariz. 406, 561 P.2d 327 (App.1977), likewise, does not hold or indicate that the court lacks jurisdiction to allocate debts. In view of its pertinence to the subject matter at hand, we quote the following passage from *Jankowski*:

> "With respect to the debts of the community, the trial court in its decree made no specific allocation. In such circumstances, the community debts remain joint obligations of the parties, and the husband and wife are jointly and severally liable for each of the individual debts. The creditor, of course, may seek satisfaction from either party. Thus in *Ellsworth v. Ellsworth*, 5 Ariz.App. 89, 423 P.2d 364 (1967), it was held that any community obligation not specifically assigned in the divorce decree is the obligation of both parties, and that if the creditor chooses to sue only one of the parties, the paying party has an action over against the nonpaying party for one-half the sums paid to the creditor, at least to the extent of the community property received by the nonpaying party in the dissolution decree. *See also Wine v. Wine*, 14 Ariz.App. 103, 480 P.2d 1020 (1971).
>
> "In this case, the appellant requested the court to make an allocation of the debts to the husband, and the court declined. Her position on appeal is that having been requested to make an allocation, the court was required to do so and could not leave the debts as the joint obligations of the parties. We disagree. No statutory provision mandates an express allocation. The record here reflects that the trial court, far from simply overlooking appellant's request for a specific allocation to the husband, considered the request fully in the hearing on appellant's motion for new trial and determined that the evidence warranted the parties' being left jointly liable for the obligations. We find no abuse of discretion." 114 Ariz. at 407–408, 561 P.2d at 328–29.

The trial court in the instant case did not choose to leave the parties jointly liable. It simply held that it was without jurisdiction to do anything else. The court erred in that regard and its ruling must be reversed. There is no basis for the position urged by appellee that the trial court exercised its discretion as the court did in *Jankowski*.

An additional issue raised by this case is whether the appellant, as a member of the former community, can be held responsible for the indebtedness resulting from his former spouse's criminal acts?

In his treatise on community property William DeFuniak suggests that based upon Spanish community property law, the answer should be a resounding "no". W. DeFuniak, J. M. Vaughen, *Principles of Com-*

*munity Property* § 184 (2nd ed. 1971). De-Funiak's conclusion is based upon the proposition that neither the separate property nor a spouse's one–half interest in the community property should be liable for the delict (tort or wrong) of another. *Id.*

■ Arizona law, however, has evolved away from that basic proposition. As this court stated in *Garrett v. Shannon*, 13 Ariz. App. 332, 333, 476 P.2d 538, 539 (1970):

> "The law is settled in Arizona that the community property of both spouses may be liable for an intentional tort committed by one of the spouses where the intent and purpose of the activity leading to the commission of the tort was to benefit the community interests. *Rodgers v. Bryan*, 82 Ariz. 143, 309 P.2d 773 (1957); and *McFadden v. Watson*, 51 Ariz. 110, 74 P.2d 1181 (1938)."

Benefit to the community need not be the primary object or intention. "All that is required is that some benefit was intended for the community." *Hofmann Co. v. Meisner*, 17 Ariz.App. 263, 268, 497 P.2d 83, 88 (1972).[1]

■ Our case law has recognized community liability for the fraud of one member. *Reese v. Cradit*, 12 Ariz.App. 233, 469 P.2d 467 (1970). Embezzlement is a criminal form of fraud. *See* A.R.S. §§ 13–681 and 13–682 (repealed October 1, 1978). To the extent that the community benefited from criminal acts of appellee which were intended by her to benefit the community, so that appellant was benefited even though he was without knowledge of the acts or the criminal character thereof, appellant's share of the community estate thus enhanced would be liable. *See Reese v. Cradit, supra*, and *Tinsley v. Bauer*, 125 Cal.App.2d 724, 271 P.2d 116 (1954).

■ We agree with DeFuniak to the extent of holding that as between the parties the perpetrator of a criminal offense should be required to hold a nonparticipating party harmless with respect to the debts created by the perpetrator's criminal acts, in the absence of knowledge, consent or ratification by the nonparticipating spouse. The authorities cited above are wholly consistent with this conclusion. On the other hand, there may be circumstances which justify placing the burden of the indebtedness upon a nonparticipating spouse. In the present case, for example, appellee testified that the parties were able to keep their residence because of the funds generated by her criminal acts. Appellant was unemployed and receiving $85 per week in workmen's compensation payments during a portion of the period of embezzlement. Appellant's act of assigning his equity in the residence to the victim of the embezzlement may be viewed in part as a recognition by him of the economic realities of the situation. Appellant also lived in the residence for many months after appellee left.

It appears that both by reason of an order entered in the early stages of the litigation which became the law of the case and also a pre–trial stipulation of the parties, each of the parties was to be responsible for his and her own debts incurred after separation. None of the other debts referred to by appellant appear to require discussion.

Allocation of indebtedness is a discretionary matter with the trial court and inasmuch as the trial judge heard the testimony and the record is not wholly devoid of conflict, we deem it most appropriate to remand the cause for determination in the superior court in accordance with the foregoing.

For the reasons set forth in this opinion, paragraph 6 of the decree of dissolution is vacated and·the cause is remanded to the superior court for further proceedings consistent herewith.

EUBANK, P. J., and O'CONNOR, J., concur.

---

1. *See also*, in regard to community liability for the intentional tort of one spouse, *Shaw v. Greer*, 67 Ariz. 223, 194 P.2d 430 (1948); *Auto-ville, Inc. v. Friedman*, 20 Ariz.App. 89, 510 P.2d 400 (1973); and *Howe v. Haught*, 11 Ariz. App. 98, 462 P.2d 395 (1969).